# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AURELIO PINERO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. |
| | ) | 11-40080-FDS |
| v. | ) | |
| | ) | |
| ROBERT E. PINO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**SAYLOR, J.**

On May 11, 2011, this Court issued an order directing plaintiff Aurelio Pinero, Jr., to show cause why this action should not be dismissed. On June 21, 2011, plaintiff responded to the Court's show-cause order. For the reasons stated below, the complaint will be dismissed.

## I. Factual Background

The complaint and response to the Court's show cause order allege as follows.

On February 27, 2004, Pinero was interviewed by Massachusetts State Police Troopers Christopher Wilcox and Margaret Gaffney about a rape that had occurred in 1994. This interview "was the result of a forensic sample profile DNA matched to [Pinero]." (Compl. ¶ 8). Robert E. Pino, CODIS Administrator for the Massachusetts State Police, had informed Trooper Wilcox that Pinero's DNA matched the forensic sample collected as part of the investigation into the 1994 rape. Pino allegedly failed to report to Trooper Wilcox, the investigating officer, that the DNA test results also noted that "In addition to the profiles obtained from the items referenced in

this report, weak results were observed. These results may be due to the presence of DNA from more than one individual or to technical artifacts, and therefore were not interpreted." (Compl. Ex. A (docket entry 1-3 p. 5)). This information was also allegedly withheld from the District Attorney's Office and the grand jury. (Resp. to Show Cause Order at 4).

On January 19, 2007, a grand jury in Hampden County heard testimony concerning the 1994 rape. Only Trooper Wilcox testified; "no other witness including the victim was present." (Compl. ¶ 16). Trooper Wilcox stated that the state crime lab sent him a "hit letter," identifying Pinero as the DNA match. (Compl. Ex. A (docket entry 1-3 p. 37)). No DNA expert witness testified. An indictment was returned that day charging Pinero with rape. On February 6, 2007, he was arraigned in state court for the crime. "After numerous hearings and court appearances, [o]n April 24, 2009, a nolle prosequi was entered and the case was dismissed against the plaintiff." (Compl. ¶ 11).[1] Although the charge against Pinero was dismissed, he alleges that the charge has had a negative affect on his classification within the Department of Correction, his eligibility for parole, and his reputation among the prison population, family members, friends, and the public. The rape charge has also caused Pinero to suffer stress, humiliation, and embarrassment.

Pinero brought this action under 42 U.S.C. § 1983 against Trooper Wilcox, Pino, and the Office of the Attorney General, contending that his Fourteenth Amendment right to due process

---

[1] According to a document attached to the complaint, the Commonwealth entered a *nolle prosequi* because the victim refused to testify about the rape, which had occurred 15 years earlier. *See* Complaint, Ex. B (docket entry 1-3, at 41) ("The victim has unequivocally stated to the victim witness advocate, to the chief investigating state police officer, and to the prosecutor that she will not testify. Despite the solid DNA evidence linking this defendant to this allegation of rape, the Commonwealth needs the victim's testimony to prove the necessary elements of the indictment.").

and his rights under the Eighth Amendment were violated. The basis of his complaint is that

> the Massachusetts Crime Lab. failed to conduct a proper and completed DNA testing and analisys [sic], when the Massachusetts State Police lead [sic] by trooper Chris Wilcox failed to conduct a proper investigation, and when the Commonwealth sought a malicious prosecution without the proper basis and without the evidence to support the claims against the plaintiff.

(*Id.* ¶ 14). Pinero argues that he suffered sleep deprivation, prolonged and extreme restraint, as well as hunger, stress, discomfort and strip searches as a consequence of being transported to court, all in violation of the Eighth Amendment's prohibition on cruel and unusual punishment. (Resp. to Show Cause Order at 8-10). He maintains that "[a] DNA match standing alone is not [enough] evidence to charge someone with criminal charges, [especially] charges of the nature of what this plaintiff was charged with." (Compl. ¶ 16). He also alleges that "not removing the dismissed charges or sealing said charges from the plaintiff's record, also violates the plaintiff's Due Process Rights, as is the misuse of a criminal charge to harm the plaintiff." (*Id.* ¶ 15). He further contends that parole eligibility is a protected liberty interest and his Fourteenth Amendment due process rights were violated because the charges adversely affected his parole eligibility. (Resp. to Show Cause Order at 11). He also seeks recovery for defamation of character and emotional and physical distress.

## II. Procedural Background

On April 12, 2011, plaintiff filed a self-prepared complaint and a motion to proceed *in forma pauperis*. On May 11, 2011, this Court granted the motion to proceed *in forma pauperis*, and issued an order directing plaintiff to show cause why this action should not be dismissed because the complaint failed to allege the deprivation of a federal right.

On June 21, 2011, plaintiff filed his response to the order to show cause. In it, he

contends that defendant Pino violated his Fourth Amendment rights by failing to report potentially exculpatory DNA evidence. Plaintiff further contends that his Eighth Amendment rights were violated as a result of his treatment prior to his court appearances. Plaintiff contends that the indictment affected his parole eligibility, which is a protected liberty interest, and that he was deprived of it in violation of his Fourteenth Amendment Due Process rights. Plaintiff also argues that defendants maliciously prosecuted him in violation of the Fourth Amendment. Finally, plaintiff appears to challenge whether the evidence presented to the grand jury was sufficient to support the indictment.

### III. Discussion

#### A. Fourth Amendment Claims

Plaintiff contends that the failure to disclose potentially exculpatory evidence to the grand jury violated his Fourth Amendment rights because it tainted the probable cause determination that led to his indictment. This claim fails as a threshold matter because he was already in prison when he was indicted, and the complaint fails to allege any additional seizure or loss of liberty under the Fourth Amendment. In any event, even if the complaint had alleged such a seizure, his claim would still fail. Among other things, the Fourth Amendment protects "the right not to be indicted and arrested on the basis of false or misleading statements given before a grand jury." *Martinez-Rodriguez v. Guevara*, 597 F.3d 414, 420 (1st Cir. 2010). However, a grand jury sits solely to determine "whether there is an adequate basis for bringing a criminal charge," and it need only hear the prosecution's side. *United States v. Williams*, 504 U.S. 36, 51 (1992). The prosecutor has no obligation to present exculpatory evidence to the grand jury. *Id.* at 52; *see also United States v. Casas*, 425 F.3d 23, 38 (1st Cir. 2005).

Furthermore, neither Pino's reporting of the DNA results to Wilcox, nor Wilcox's testimony to the grand jury, can be characterized as false or misleading for these purposes. Wilcox accurately testified before the grand jury that the crime lab identified the DNA as a match for plaintiff's DNA. Plaintiff argues that because the report indicated that the sample could contain DNA from more than one individual, the results are ambiguous as to his culpability, and this could be characterized as exculpatory evidence. The language in the report could potentially be exculpatory, but even if Wilcox had known, his testimony would be incomplete at worst. *Compare Burke v. Town of Walpole*, 405 F.3d 66, 81-85 (1st Cir. 2005) (finding sufficient evidence to support a finding of arrest without probable cause in violation of the Fourth Amendment when an investigating officer withheld DNA evidence that excluded the plaintiff as a suspect). In summary, Pino's failure to disclose potentially exculpatory evidence to the grand jury is not a violation of plaintiff's Fourth Amendment rights, and the complaint therefore fails to state a claim as to that issue..

### B. Eighth Amendment Claims

Plaintiff next contends that because of the indictment he was required to attend pretrial hearings that led to a violation of his Eighth Amendment rights against cruel and unusual punishment. Plaintiff argues that being woken up early for transport caused him to suffer from sleep deprivation, and that being shackled during transport constituted prolonged and unreasonable restraint. These arguments fail for multiple reasons.

First, the Eighth Amendment protections against cruel and unusual punishment do not attach until after a person has been judged guilty. *See Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 9 (1st Cir. 2007). The alleged mistreatment that plaintiff describes was not imposed

5

following a finding of guilt and is therefore not properly the subject of an Eighth Amendment claim.

Second, and even if the alleged mistreatment fell under the protections of the Eighth Amendment, it would not suffice to state a claim. Conditions that are restrictive and harsh are simply "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). For conduct to constitute cruel and unusual punishment, it cannot merely be negligent or inadvertent, but instead must be wanton or malicious. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Being woken up early and shackled as a prisoner for transport is not cruel and unusual punishment by an objective standard.[2] Moreover, plaintiff has only alleged that defendants "knew or reasonably should have known" of the situation, but does not allege a sufficient mental state such as wantonness or malice.

Third, in a § 1983 claim, only individuals who "participated in the conduct that deprived the plaintiff of his rights can be held liable." *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005). Direct participation is not necessary, and a defendant who set in motion a series of events that he knew or reasonably should have known would cause others to deprive the plaintiff of his constitutional rights can be held liable. *Poolaw v. Marcantel*, 565 F.3d 721, 732-33 (10th Cir. 2009).

Here, plaintiff contends that defendants should be held responsible for the Eighth Amendment violations because they knew or should have known that their alleged misconduct would result in plaintiff being indicted and having to appear in court. But any causal link between

---

[2] An inquiry into a claim of an Eighth Amendment violation has both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

defendants' conduct and the alleged constitutional violations is far too weak to support a claim. As noted above, exculpatory evidence does not need to be shown to a grand jury, which negates any causal link between defendants' alleged misconduct and the constitutional violations. Assuming that being woken up early and shackled for transport is an Eighth Amendment violation, defendants could not reasonably expect that every person brought before the court has had his constitutional rights violated. Alternatively, if there was only a constitutional violation because of particular treatment of plaintiff, defendants would not be able to reasonably foresee the intervening misconduct by Department of Corrections personnel.

Accordingly, the complaint fails to state a claim under § 1983 for violation of plaintiff's Eighth Amendment rights.

### C. Fourteenth Amendment Claims

Plaintiff contends that he has a protected liberty interest in his parole eligibility, and that having an additional criminal charge on his record will adversely affect that eligibility. As a result, he argues that he has been deprived on a liberty interest without due process.

A liberty interest may arise from the Constitution, or from an expectation or interest created by state laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A convicted person has no constitutional or inherent right to conditional release prior to the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). Statutory language can create a protectible expectation of parole, but whether any statute "provides a protectible entitlement must be decided on a case-by-case basis." *Id.* at 11-12; *see also Lanier v. Fair*, 876 F.2d 243, 251-3 (1st Cir. 1989) (discussing cases in which courts have found an expectation of parole to be a protected liberty interest).

7

Although it may be possible that statutory language gives plaintiff a protected liberty interest in his parole eligibility, he has not pleaded sufficient facts to show that such an interest exists. Furthermore, even assuming that he does have a liberty interest in his parole eligibility, he has not alleged facts to show that he was deprived of that interest without sufficient due process. The complaint therefore fails to state a claim for violation of his Fourteenth Amendment due process rights.

### D.  Malicious Prosecution Claims

The original complaint alleged that plaintiff's due process rights were violated by defendants' acts of malicious prosecution. This contention was rejected in the Court's May 11, 2011 show cause order because "the Due Process Clause of the Fourteenth Amendment does not provide a substantive right to be free from criminal prosecutions unsupported by probable cause." *Britton v. Maloney*, 193 F.3d 24, 28 (1st Cir. 1999). Plaintiff now attempts to reframe the malicious prosecution claim under the Fourth Amendment. As the Court noted in a footnote to the May 11 show cause order, it remains an open question in the First Circuit as to whether an independent Fourth Amendment malicious prosecution claim is cognizable under § 1983. *See Burke v. McDonald*, 572 F.3d 51, 58 n.8 (1st Cir. 2009). This Court need not address that question here. Plaintiff has failed to allege a "seizure" within the meaning of the Fourth Amendment and he was already in prison serving a criminal sentence at the time. *See, e.g., Jacobs v. City of Pittsburgh*, 2011 WL 1584869, at *4 (W.D. Pa. Feb. 18, 2011) (finding that an incarcerated prisoner cannot bring a malicious prosecution action under the Fourth Amendment because he has already been deprived of liberty). The complaint therefore fails to state a Fourth Amendment malicious prosecution claim.

### E. Sufficiency of Evidence Presented to Grand Jury

In his original complaint, plaintiff contended that DNA evidence alone was insufficient to support an indictment. In his response to the show cause order, plaintiff notes that the DNA evidence was the only evidence linking him to the alleged crime, defendant Wilcox was the only witness to testify before the grand jury, and no expert witness testified on the subject of DNA testing and evidence. While plaintiff does not clearly state any legal arguments, he appears to be challenging the sufficiency of the evidence for the indictment, or arguing that the evidence was insufficient to support a finding of probable cause. An indictment that is valid on its face may not be challenged "on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338, 345 (1974). The grand jury returned a valid indictment, and thus plaintiff cannot challenge the indictment on the basis of the quality or quantity of the evidence.

## IV. Conclusion

For the foregoing reasons, the complaint is DISMISSED for failure to state a claim upon which relief can be granted.

**So Ordered.**

/s/ F. Dennis Saylor<br>
F. Dennis Saylor IV<br>
United States District Judge

Dated: December 8, 2011